**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS LUCA JR., individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil No. 2:16-cv-00746 (MRH) |
| v. | |
| WYNDHAM HOTEL GROUP, LLC and WYNDHAM HOTELS AND RESORTS, LLC, | Electronically Filed and Served |
| Defendants. | |

## DEFENDANTS' ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT

**Wyndham Hotel Group, LLC and Wyndham Hotels and Resorts, LLC[1] (collectively, "Wyndham"), answer Plaintiff's complaint as follows:**

## CLASS ACTION COMPLAINT

Plaintiff THOMAS LUCA JR. brings this action on behalf of himself and all others similarly situated against WYNDHAM WORLDWIDE CORPORATION, WYNDHAM HOTEL GROUP, LLC, WYNDHAM HOTELS AND RESORTS, LLC, and WYNDHAM HOTEL MANAGEMENT, INC. (collectively "Defendants") and states:

## INTRODUCTION

1.      As a prerequisite to booking a hotel room on Defendants' websites ("www.wyndham.com" and "www.wyndhamhotelgroup.com" (the "Websites")), consumers are required to accept Defendants' Terms of Use Agreement (the "Terms of Use"), which, among

---

[1] **Plaintiff's claims against Wyndham Hotel Management, Inc. and Wyndham Worldwide Corporation were dismissed by the Court's February 15, 2017 Order.**

other things, mandates that New Jersey law governs all transactions arising from the Websites, regardless of where the consumer is located when he or she accesses the Websites. Consistent with the Defendants' preference and mandate that New Jersey law apply, Plaintiff brings this action individually and on behalf of a national class of all others similarly situated against Defendants, alleging violations of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et seq.* and the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14, *et. seq.*

**ANSWER:  Wyndham states that its Terms of Use and websites speak for themselves and therefore no further response is required.  Wyndham denies that Plaintiff can maintain this action as a class action and denies that any class can be certified.  The allegations in paragraph 1 also contain legal conclusions, and therefore no response is required.  To the extent any further response is required, Wyndham denies the allegations in paragraph 1.**

2.      The CFA targets unlawful sales and advertising practices intended to induce consumers to purchase products or services, and is designed to address sharp practices and dealings in the marketing of products and services whereby consumers could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kinds of selling or advertising practices.

**ANSWER:  The allegations in paragraph 2 are legal conclusions that purport to characterize the New Jersey Consumer Fraud Act, which speaks for itself, and therefore no response is required.  To the extent any further response is required, Wyndham denies the allegations in paragraph 2.**

3.     The TCCWNA was enacted specifically to prevent deception in consumer contracts or notices and to incentivize businesses to draft contracts and notices that are clear and understandable to all consumers, and that clearly explain the legal rights of consumers and the legal responsibilities of businesses.

**ANSWER:  The allegations in paragraph 3 are legal conclusions that purport to characterize the Truth-in-Consumer Contract, Warranty and Notice Act, which speaks for itself, and therefore no response is required.  To the extent any further response is required, Wyndham denies the allegations in paragraph 3.**

4.     Defendants have violated these statutes repeatedly through their online advertising and booking of hotel rooms at Wyndham hotels worldwide.

**ANSWER:  Wyndham denies the allegations in paragraph 4.**

5.     Through the Websites, Defendants advertise room rates for the hotels and resorts they franchise, own, control, operate and/or manage, and allow consumers to book stays at such hotels and resorts.

**ANSWER:  Wyndham admits that it advertises hotel rooms on its websites and that consumers may book reservations through those websites.  Wyndham denies any remaining allegations in paragraph 5.**

6.     As part of the booking process, Defendants charge consumers a daily mandatory "resort fee." This "resort fee," because it is mandatory, constitutes part of the actual daily cost of the room that Defendants charge consumers to stay at their hotels.

**ANSWER: Wyndham admits that certain hotels charge guests a daily resort fee that covers amenities and/or services offered at those properties. Wyndham denies any remaining allegations in paragraph 6.**

7.      Despite the fact that the resort fee constitutes part of the true cost to the consumer to rent a room from Defendants, the resort fee is <u>not</u> included in the bolded, large-font price displayed on Defendants' Websites as the nightly rate for the room, nor is the resort fee advertised or otherwise clearly disclosed. Defendants fail to explain that the resort fee constitutes part of the true cost of renting a hotel room. Instead, Defendants advertise rooms at rates that do not include the resort fee, and lead consumers to the false belief that the resort fee is merely a "tax" that is not part of the true cost of renting a room at Defendants' hotels.

**ANSWER: Wyndham denies the allegations in paragraph 7.**

8.      Defendants' failure to adequately disclose the resort fee charge as part of the true cost of renting a hotel room is deceptive and causes consumers, including Plaintiff and the Class, to believe that they are paying substantially less than they actually are being charged for a room at Defendants' hotels. As a result, consumers, in making their decision to rent a room from Defendants, as opposed to renting a room from one of Defendants' competitors, are not aware of the actual price they must pay to rent the room from Defendants and are therefore unable to make an informed purchase decision among the various competitors in the hotel room marketplace. This result is intended by Defendants and is the very purpose behind Defendants' practice of carving out a portion of its room charge, calling it a "resort fee," and excluding it from the big, bolded number that consumers use for price comparison among hotels. Defendants' practice is the quintessential definition of consumer fraud.

**ANSWER: Wyndham denies the allegations in paragraph 8.**

9.      To make matters worse, the Terms of Use, with which Plaintiff and the Class were required to agree, purport to disclaim virtually all liability connected with the booking process and renting a room from Defendants.

**ANSWER:**  **Wyndham denies the allegations in paragraph 9, except to state that Wyndham's Terms of Use speaks for itself.**

10.      Specifically, the Terms of Use purport to: 1) disclaim liability for claims brought for Defendants' negligent, willful, malicious and wanton misconduct; 2) bar claims for personal and economic injury and punitive damages; and 3) ban consumers from asserting claims against Defendants for deceptive and fraudulent conduct. All of the aforementioned provisions are in direct contravention of rights afforded to Plaintiff and the proposed class, and the legal responsibilities of Defendants, under New Jersey law, and therefore violate TCCWNA.

**ANSWER:**  **Wyndham denies the allegations in paragraph 10, except to state that Wyndham's Terms of Use speaks for itself.**

11.      The inclusion of these violative provisions in the Terms of Use deceives consumers into thinking that the provisions are enforceable and accordingly, gives consumers the impression that they are unable to enforce rights they otherwise have under New Jersey statutory and common law.

**ANSWER:**  **Wyndham denies the allegations in paragraph 11.**

12.      As a result of Defendants' illegal and deceptive conduct, Plaintiff, on behalf of himself and the Class, seeks statutory penalties, actual damages, attorneys' fees, costs of suit, and any additional legal or equitable relief the Court deems appropriate.

**ANSWER:** Wyndham denies any alleged illegal and deceptive conduct. The remaining allegations in paragraph 12 purport to characterize Plaintiff's complaint and therefore no response is required. To the extent any further response is required, Wyndham denies the remaining allegations in paragraph 12.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C §1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and is a class action in which at least some members of the proposed class have a different citizenship from Defendants. There are more than 100 putative class members.

**ANSWER:** Wyndham lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13, and therefore denies them.

14. The Western District of Pennsylvania has personal jurisdiction over Defendants named in this action because Defendants conduct substantial business in this District.

**ANSWER:** Wyndham states that Plaintiff's claims against Wyndham Hotel Management and Wyndham Worldwide Corporation were dismissed by the Court's February 15, 2017 Order, and therefore no response is required with respect to those defendants over which the Court does not have personal jurisdiction. Wyndham admits that this Court has specific personal jurisdiction over the remaining defendants: Wyndham Hotel Group and Wyndham Hotels and Resorts.

15. Venue is proper in the Western District of Pennsylvania under 28 U.S.C. § 1391(b) because Defendants transact substantial business in this District, Plaintiff was harmed in

this District, and both the CFA and the TCCWNA give Plaintiff the right to sue in a "court of competent jurisdiction." N.J.S.A. 56:8-19; N.J.S.A. § 56:12-17

**ANSWER:  Wyndham admits that venue is proper at the present time.  Wyndham denies any remaining allegations in paragraph 15.**

## PARTIES

16.     Plaintiff, Thomas Luca Jr., is and, at all times relevant hereto, was, a resident and citizen of New Castle, Pennsylvania.

**ANSWER:  Wyndham lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 16, and therefore denies them.**

17.     Defendant Wyndham Worldwide Corporation ("Wyndham Worldwide") is a Delaware corporation with its principal place of business in Parsippany, New Jersey, and is a citizen of Delaware and New Jersey. At all times relevant hereto, Wyndham Worldwide has controlled the acts and practices of its subsidiaries described below and approved of or benefitted from such subsidiaries acts and practices at issue in this Complaint.

**ANSWER:  Wyndham states that Plaintiff's claims against Wyndham Worldwide Corporation were dismissed by the Court's February 15, 2017 Order, and therefore no response is required.   To the extent a response is required, Wyndham admits that Wyndham Worldwide is incorporated in Delaware and headquartered in New Jersey, but denies the remaining allegations in paragraph 17.**

18.     Defendant Wyndham Hotel Group, LLC ("Hotel Group") is a Delaware corporation with its principal place of business in Parsippany, New Jersey, and is a citizen of Delaware and New Jersey. Hotel Group operates www.wyndhamhotelgroup.com. Hotel Group is

a wholly-owned subsidiary of Wyndham Worldwide, and through its subsidiaries franchises, owns, controls, operates and/or manages over 7,000 hotels. At all times relevant hereto, Hotel Group has controlled the acts and practices of its subsidiaries described below and approved of or benefitted from such subsidiaries acts and practices at issue in this Complaint.

**ANSWER:** **Wyndham admits that Wyndham Hotel Group is incorporated in Delaware and is headquartered in New Jersey. Wyndham admits that Wyndham Hotel Group operates certain websites. Subsidiaries of Wyndham Hotel Group manage and/or franchise hotels, and two hotels are owned by affiliates of Wyndham Hotel Group. Wyndham denies the remaining allegations in paragraph 18.**

19. Defendant Wyndham Hotels and Resorts, LLC ("Hotels and Resorts") is a Delaware corporation with its principal place of business in Parsippany, New Jersey, and is a citizen of Delaware and New Jersey. Hotels and Resorts operates www.wyndham.com, and franchises Wyndham hotels worldwide. Hotels and resorts is a wholly-owned subsidiary of Hotel Group. Hotel Group and Wyndham Worldwide controlled the acts and practices of Hotels and Resorts at issue here.

**ANSWER:** **Wyndham admits that Wyndham Hotels and Resorts is a Delaware corporation headquartered in New Jersey, and is a corporate subsidiary of Wyndham Hotel Group. Wyndham further admits that Hotels and Resorts franchises hotels worldwide. Wyndham states that Plaintiff's claims against Wyndham Hotel Group and Wyndham Worldwide Corporation were dismissed by the Court's February 15, 2017 Order, and therefore no response is required with respect to those defendants. Wyndham denies any remaining allegations in paragraph 19.**

20.     Defendant Wyndham Hotel Management, Inc. ("Hotel Management") is a Delaware corporation with its principal place of business in Parsippany, New Jersey, and is a citizen of Delaware and New Jersey. Hotel Management is a wholly-owned subsidiary of Hotel Group. Hotel Management controls, operates and/or manages Wyndham hotels worldwide. Hotel Group and Wyndham Worldwide controlled the acts and practices of Hotel Management at issue here.

**ANSWER:   Wyndham states that Plaintiff's claims against Wyndham Hotel Management were dismissed by the Court's February 15, 2017 Order, and therefore no response is required.   To the extent a response is required, Wyndham admits that Wyndham Hotel Management is a Delaware corporation headquartered in New Jersey, and is a corporate subsidiary of Wyndham Hotel Group, but denies the remaining allegations in paragraph 20.**

21.     The www.wyndhamhotelgroup.com website and the www.wyndham.com website are almost identical. Both have a Landing Page, List Page, Room Rates Page, Check-Out Page and Confirmation Page (these terms are defined below) that display identical information. Additionally, the Terms of Use governing access and use of both Websites are identical.

**ANSWER:   Wyndham denies the allegations in paragraph 21, except to state that the websites and Terms of Use speak for themselves.**

22.     Given the identical information and identical presentation of information contained on the Websites, it is clear that all Defendants are working jointly in an effort to strip consumers of their rights and deceive them into booking stays at Wyndham hotels. Furthermore, all Defendants have operated as a common business enterprise while engaging in the unfair and deceptive acts and practices alleged in this Complaint. Defendants have conducted their business

practices as described herein through an interrelated network of companies that have common ownership, business functions, employees and office locations. Because Defendants have operated as a common enterprise, they are jointly and severally liable for the acts and practices described below, and will be referred to collectively as "Defendants."

**ANSWER: Wyndham denies the allegations in paragraph 22, except to state that the websites speak for themselves. Wyndham further states that Plaintiff's claims against Wyndham Hotel Group and Wyndham Worldwide Corporation were dismissed by the Court's February 15, 2017 Order, and therefore no response is required with respect to those defendants.**

## FACTUAL BACKGROUND

### A. Resort Fees

23.     In 2013, hotels in the United States collected an estimated $2.1 billion dollars in resort fees alone, approximately twice the amount from a decade ago. *See* Christopher Elliott, *Travelers want 'resort' fees to check out – permanently*, USA TODAY (Jan. 13, 2014), http://www.usatoday.com/story/travel/hotels/2014/01/12/hotel-resort-fee-service-charge/4441287/.

**ANSWER: Wyndham lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 23, and therefore denies them.**

24.     A resort fee is a mandatory per night fee that hotel operators add on to an advertised nightly room rate. The resort fee does not actually cover anything in addition to the room, like amenities, services or other additions. Instead, it is an arbitrary amount that is deducted from the room rate a hotel operator charges consumers to stay at its hotels. By

deducting this arbitrary amount from the room rate, the hotel operator can advertise the nightly room rate as lower than it actually is. The hotel operator then includes the resort fee later in the transaction so it can collect from the consumer the total actual price for renting a room at its hotel without having to advertise the room rate at its full price.

**ANSWER:  Wyndham denies the allegations in paragraph 24.**

25.     As explained below, Defendants charge resort fees at certain of their hotels, and mislead consumers into believing that the fees are not part of the actual cost of renting hotel rooms from Defendants.

**ANSWER:   Wyndham admits that certain properties owned, managed, or franchised by Wyndham charge resort fees, but denies the remaining allegations in paragraph 25.**

B.      <u>**Resort Fees And Drip Pricing Hurt Consumers And Are Harmful To Competition**</u>

26.     Resort fees, like those charged by Defendants, are represented as separate from the actual room rate and are disclosed, if at all, after a hotel operator presents the consumer with an initial price "estimate" or "quote." This practice is known as "drip price" advertising, which is "a pricing technique in which firms advertise only part of a product's price and reveal other charges later as the customer goes through the buying process." Warning Letter, Federal Trade Commission (November 2012) (hereinafter "2012 FTC Warning Letter"), *available at* https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-warns-hotel-operators-price-quotes-exclude-resort-fees-other-mandatory-surcharges-may-be/121128hoteloperatorsletter.pdf.

**ANSWER:  Wyndham denies the allegations in paragraph 26.**

27.     Research has shown that the "drip pricing" model has a powerful ability to influence, mislead and deceive consumers to spend more than they otherwise intend to, or buy a product or service they otherwise would not purchase.

**ANSWER:  Wyndham denies the allegations in paragraph 27.**

28.     Such research demonstrates that the "base," or originally disclosed price, detrimentally influences consumers, rather than the ancillary fees that ultimately increase the total price for the relevant product or service.

**ANSWER:  Wyndham denies the allegations in paragraph 28.**

29.     For example, research from the Stern School of Business has shown that consumers were more likely to buy products or choose services when those products and services were advertised using the "drip pricing" model. *See* Vicki Morwitz & Shelle Santana, *How consumers react to partitioned and drip pricing: Evidence from the lab*, *available at*, https://www.ftc.gov/sites/default/files/documents/public_events/economics-drip-pricing/vmorwitz.pdf.

**ANSWER:  Wyndham lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 29, and therefore denies them.**

30.     "Drip pricing" confuses consumers and deceptively influences them into believing that the price they are paying is not as high as it actually is. The lower "base" price leads to lower price perception and, in turn, leads to higher demand for the drip priced product/service over comparable products/services that have all fees and costs properly included at the outset.

**ANSWER:  Wyndham denies the allegations in paragraph 30.**

31.     Other research has shown that the use of "drip pricing" in advertisement and sales leads to inefficient market outcomes as consumers tend to over value the original price and are misled by disclosure of additional mandatory fees later in the transaction. *See* Federal Trade Commission, *A Conference On The Economics Of Drip Pricing*, 22-28 (May 21, 2012), *available at*, https://www.ftc.gov/sites/default/files/documents/public_events/economics-drip-pricing/tran script.pdf.

**ANSWER:  Wyndham lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 31, and therefore denies them.**

32.     The aforementioned research studies demonstrate that the deceptive nature of "drip pricing" has harmful consequences to both consumers and honest business entities.

**ANSWER:  Wyndham denies the allegations in paragraph 32.**

33.     "Drip pricing" effectively "anchors" consumers to the initial numeric information they are presented, often misleading them and preventing them from adjusting to additional information regarding increases in price. *Id.* at 62-63. In other words, consumers grasp onto the "headline" advertised price, and then fail to adjust their perception of this price.

**ANSWER:  Wyndham denies the allegations in paragraph 33.**

34.     "Drip pricing" also takes advantage of the fact that consumers "endow" themselves to the "headline" price. Once reasonable consumers see the initial advertised priced, they get used to buying the product, service, room, etc. at that initial price. This creates a type of loss aversion because consumers feel differently about the product, service, or room then they did before they started and thus, mistakenly, value it over other products, services, or rooms which are of equal or greater value. *Id.* at 63.

**ANSWER: Wyndham denies the allegations in paragraph 34.**

35.     Finally, "drip pricing," in luring consumers into transactions with artificially low prices, misleads consumers into yet another behavioral process: commitment. *Id.* Once a consumer is committed to a transaction, the consumer is less likely to walk away.

**ANSWER: Wyndham denies the allegations in paragraph 35.**

36.     In short, "drip pricing" creates expectations about value. By advertising a price without a resort fee, and then disclosing that fee at or after payment, or not at all, a hotel operator is able to deceive consumers about the actual value of the rooms they are booking. This deception hurts consumers in multiple ways, including inducing them to buy a product or service they do not need or want, and preventing them from operating efficiently and properly in the marketplace.

**ANSWER: Wyndham denies the allegations in paragraph 36.**

37.     Drip pricing also hurts competition because consumer purchasing decisions are effectively driven by the cheapest headline price. So, companies that include the entire cost in their headline price are disadvantaged. *Id.* at 63-64.

**ANSWER: Wyndham denies the allegations in paragraph 37.**

38.     When reasonable consumers are shopping for a hotel and initially see a low "drip priced" room rate they will value that hotel room based on the initially disclosed, artificially low rate. Even if the additional fees are disclosed later in the booking process a reasonable consumer is still likely to believe that the "drip priced" room is comparatively better than another hotel room with all fees originally disclosed. To be sure, a survey of 3,000 consumers showed that

75% of consumers objected to "drip pricing" generally, and 44% said they would have bought elsewhere had they known the total cost up-front. Id. at 69.

**ANSWER: Wyndham denies the allegations in paragraph 38.**

C.     **The FTC Has Urged Hotels To Display All Mandatory Charges In The Base Room Rate Advertised To Customers**

39.     In May of 2012, the FTC held a conference on "drip pricing," and found that a common consumer complaint regarding this practice involved the mandatory charge of hotel resort fees in addition to the quoted room price. *See* 2012 FTC Warning Letter.

**ANSWER: Wyndham denies the allegations in paragraph 39, except to state that the FTC Warning letter speaks for itself.**

40.     Pursuant to these complaints, the FTC reviewed a number of online hotel reservation sites and found:

> [S]ome hotels exclude resort fees from the quoted reservation price. Instead, the "total price" or "estimated price" quoted to consumers includes only the room rate and applicable taxes. At some of these sites, the applicable resort fee is listed nearby, but separate from, the quoted price. In others, the quoted price is accompanied by an asterisk that leads consumers to another location at the site – sometimes on the same page, sometimes not – where the applicable resort fee is disclosed, typically in fine print. A few sites fail to identify applicable resort fees anywhere, and instead inform consumers that other undefined fees may apply.

*Id.*

**ANSWER: The allegations in paragraph 40 purport to characterize the terms of a written document, the terms of which speak for themselves. Therefore, no response is required. To the extent a response is required, Wyndham denies the allegations in paragraph 40, except to state that the FTC Warning letter speaks for itself.**

41.     The FTC concluded that these practices were deceptive because they misrepresented the price consumers could expect to pay for their hotel rooms. In a warning letter the FTC explicitly stated "[w]e believe that online hotel reservation sites should include in the quoted total price any unavoidable and mandatory fees, such as resort fees, that consumers will be charged to stay at the hotel. While a hotel reservation site may breakdown the components of the reservation estimate...the most prominent figure for consumers should be the total inclusive estimate." *Id.*

**ANSWER:** **The allegations in paragraph 41 purport to characterize the terms of a written document, the terms of which speak for themselves. Therefore, no response is required. To the extent a response is required, Wyndham denies the allegations in paragraph 41, except to state that the FTC Warning letter speaks for itself.**

42.     In a press release announcing the warning letters, Jon Leibowitz, the FTC Chairman, condemned the practice of drip pricing and stated "[c]onsumers are entitled to know in advance the total cost of their hotel stays. So-called 'drip pricing' charges, sometimes portrayed as 'convenience' or 'service' fees, are anything but convenient, and businesses that hide them are doing a huge disservice to American consumers." Press Release, Federal Trade Commission, FTC Warns Hotel Operators that Price Quotes that Exclude 'Resort Fees' and Other Mandatory Surcharges May Be Deceptive (Nov. 28, 2012), *available at*, https://www.ftc.gov/newsevents/press-releases/2012/11/ftc-warns-hotel-operators-price-quotes-exclude-resort-fees-other.

**ANSWER:** **The allegations in paragraph 42 purport to characterize the terms of a written document, the terms of which speaks for themselves. Therefore, no response is**

required.  To the extent a response is required, Wyndham denies the allegations in paragraph 42, except to state that the FTC press release speaks for itself.

### D.     Defendants' Booking Process Is Deceptive And Misleads Consumers

#### i.     The booking process

43.     Defendants charge a per night resort fee to consumers who rent hotel rooms at Wyndham hotels.  These fees, although not included in the bold, large font price displayed on Defendants' Websites, are part of the true nightly cost of renting the room.

**ANSWER:   Wyndham admits that certain properties owned, managed, or franchised by Wyndham charge consumers a daily resort fee that covers certain amenities and/or services offered at those properties.  Wyndham denies the remaining allegations in paragraph 43.**

44.     Defendants' Websites routinely and uniformly misrepresent the true cost of renting a room at Wyndham hotels by failing to adequately disclose the resort fee, and advertising nightly room rates that do not include the per night resort fee charge.  In fact, to the extent the resort fee ever is disclosed, Defendants misrepresent the fee as a "tax," leading consumers who happen to notice the charge to believe that it is not a cost associated with renting a room, but an unavoidable regulatory expense charged by the city and/or state in which a specific hotel is located.

**ANSWER:  Wyndham denies the allegations in paragraph 44.**

45.     On the Landing Page of Defendants' Websites, consumers can search for available rooms at Defendants' hotels worldwide through the use of various search terms, including location, date, number of rooms and number of persons.[2]



**ANSWER:  Wyndham states that its websites speak for themselves and no further response is required.  To the extent any further response is required, Wyndham denies any remaining allegations in paragraph 45.**

46.     Upon entering their search terms, consumers are presented with a list of hotel locations that match their search criteria (the "List Page").

**ANSWER:  Wyndham states that its websites speak for themselves and no further response is required.  To the extent any further response is required, Wyndham denies any remaining allegations in paragraph 46.**

47.     On the List Page, to the right of each hotel location, the "Average Nightly Rate" is prominently displayed.  This rate does not include Defendants' per night resort fee charge, and the resort fee is never mentioned.

---

[2]  The screen shots displayed in this complaint are from www.wyndham.com.  As explained in ¶¶ 21-22, *supra*, both www.wyndham.com and www.wyndhamhotelgroup.com are virtually identical.  Accordingly, these screen shots are illustrative of both websites.



**ANSWER:** **Wyndham states that its websites speak for themselves and no further response is required. To the extent any further response is required, Wyndham denies any remaining allegations in paragraph 47.**

48.　　If consumers click on "CHECK RATES," they are taken to a page that displays room rates for the listed hotel (the "Room Rates Page").

**ANSWER:** **Wyndham states that its websites speak for themselves and no further response is required. To the extent any further response is required, Wyndham denies any remaining allegations in paragraph 48.**

49.　　On the Room Rates Page, available rooms and their applicable rates are displayed. At the top of the page the "Wyndham Daily Rate" is displayed, and directly to the right of each available room, Defendants display the "Avg. Nightly Rate." Neither the "Wyndham Daily Rate" nor the "Avg. Nightly Rate" includes Defendants' resort fee.



**ANSWER:  Wyndham states that its websites speak for themselves and no further response is required.  To the extent any further response is required, Wyndham denies any remaining allegations in paragraph 49.**

50.     Defendants fail to clearly and conspicuously disclose the existence or inclusion of their "resort fee" anywhere on the Room Rates Page. Instead, Defendants hide the "resort fee" in a blue underlined hyperlink entitled "View total cost with taxes & fees."  When consumers click on this hyperlink, a total amount entitled "Estimated taxes & fees" is displayed.  This amount is in addition to the clearly and conspicuously advertised "Avg. Nightly Rate," and includes the "resort fee" in an itemized list of applicable taxes.

**ANSWER:  Wyndham states that its websites speak for themselves and no further response is required.  To the extent any further response is required, Wyndham denies any remaining allegations in paragraph 50.**

51.     If a consumer wishes to reserve the room they can click the "RESERVE" button and are taken to the Check-Out Page.

**ANSWER:  Wyndham states that its websites speak for themselves and no further response is required.  To the extent any further response is required, Wyndham denies any remaining allegations in paragraph 51.**

52.     On the Check-Out Page, consumers are presented with an itemized list containing the following headings: selected room; number of rooms; number of nights requested; "Wyndham Daily Rate;" "Tax;" and "Total for Stay."



**ANSWER:  Wyndham states that its websites speak for themselves and no further response is required.  To the extent any further response is required, Wyndham denies any remaining allegations in paragraph 52.**

53.     The amount displayed under the "Wyndham Daily Rate" heading is the per night room rate without the per night resort fee included.  The amount displayed under the "Tax" heading is comprised of three components: 1) the state tax on the "Wyndham Daily Rate"; 2) the city tax on the "Wyndham Daily Rate"; and 3) the per night resort fee charge. Importantly, this amount is labeled as a "Tax," leading consumers to believe that this amount represents an

increase in price resultant from taxes, not that this amount represents part of the true cost of the room itself.

**ANSWER:  Wyndham states that its websites speak for themselves and no further response is required.  To the extent any further response is required, Wyndham denies any remaining allegations in paragraph 53.**

54.     After consumers review the pricing information, they are prompted to enter their payment information, and then are directed to "Submit Reservation."

**ANSWER:  Wyndham states that its websites speak for themselves and no further response is required.  To the extent any further response is required, Wyndham denies any remaining allegations in paragraph 54.**

55.     When consumers submit their reservation, they are taken to a Confirmation Page, which, identical to the Check-Out Page, advertises the "Wyndham Daily Rate" as excluding the resort fee, and the "Tax" amount as including the resort fee charge.

**ANSWER:  Wyndham states that its websites speak for themselves and no further response is required.  To the extent any further response is required, Wyndham denies any remaining allegations in paragraph 55.**

       **ii.**      **Plaintiff's experience**

56.     Plaintiff accessed www.wyndham.com and used the website to book a one room two night stay at the Shelborne Wyndham Grand South Beach, located in Miami Beach, Florida.

**ANSWER:  Wyndham lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 56, and therefore denies them.**

57. Upon accessing the website, Plaintiff searched for available rooms at Defendants' Shelborne hotel, and found rooms available for a nightly rate of $359.00. This rate did not include the per night resort fee charge. Believing he was renting a room at a base rate of $359.00, Plaintiff attempted to reserve a one room two night stay at Defendants' hotel.

**ANSWER: Wyndham lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 57, and therefore denies them.**

58. At the Check-Out Page, Defendants represented that Plaintiff's "Total for Stay" was $868.52. According to Defendants' Check-Out Page, this "Total" was the sum of the $359.00 nightly room rate (absent the per night resort fee charge), which totaled $718.00 for a two night stay, and a "Tax," which totaled $150.52.

## Reserve Room

| Room Information | Stay: | Taxes and Fees: |
|---|---|---|
| **CITY VIEW KING** **No smoking** 280 Sq. Ft. King bed and colorful city views. Work Space, Desk, Honor Bar featuring premium organic alternatives European and retro-inspired accents. Romantic bottom-of-the-bed lighting. Private label, all natural designer bathroom amenities and modern decor. | 1 Room, 2 Nights **Occupancy:** 2 Adults, 0 Child | Tax not included Resort Fee USD 25.00 City Tax 7 PCT State Tax 7 PCT **Marketing Information:** Wyndham Hotels and Resorts - Your Wyndham is Waiting **Commission Policy:** Commission policy for travel agents is 10% Check In: Friday, 05/27/2016 After 4:00 PM Check Out: Sunday, 05/29/2016 Before 11:00 AM |

**Best Available Rate plus 500pts:** Best available rate plus Wyndham Reward 500 bonus points on weekend stay for a Friday and Saturday check-in..

**Cancellation Policy:** CANCEL BY 6PM 24-MAY-16

**Deposit Required:** A deposit is not required for guarantee of your reservation.

| Selected Room | #.Rooms | # Nights | Best Available Rate plus 500pts | Tax | Total for Stay* |
|---|---|---|---|---|---|
| CITY VIEW KING | 1 | 2 | 359.00 USD | 150.52 USD | **868.52** USD |

**ANSWER:** **Wyndham lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 58, and therefore denies them.**

59. Once Plaintiff entered his personal information and reserved the room, he was taken to a Confirmation Page, which again represented that Plaintiff's "Total for Stay" was $868.52. Defendants represented that this "Total" was the sum of the $359.00 nightly room rate (absent the per night resort fee charge), which totaled $718.00 for a two night stay, and a "Tax," which totaled $150.52.

## Confirmation

**Room Information**

**CITY VIEW KING**
No smoking
280 Sq. Ft. King bed and colorful city views. Work Space, Desk, Honor Bar featuring premium organic alternatives European and retro-inspired accents. Romantic bottom-of-the-bed lighting. Private label, all natural designer bathroom amenities and modern decor.

**Stay:**
1 Room, 2 Nights
**Occupancy:**
2 Adults, 0 Child

**Taxes and Fees:** Tax not included Resort Fee USD 25.00 City Tax 7 PCT State Tax 7 PCT

**Marketing Information:**
Thank you for making your reservation with us

**Commision Policy:**
COMMISSION 10% AVAILABLE

Check In: Friday, 05/27/2016 After 4:00 PM

Check Out: Sunday, 05/29/2016 Before 11:00 AM

**Best Available Rate plus 500pts:** Best available rate plus Wyndham Reward 500 bonus points on weekend stay for a Friday and Saturday check-in..

**Cancellation Policy:** Cancel By 24-MAY-16

**Deposit Required:** A deposit is not required for guarantee of your reservation.

*Recipient of the 2015 TripAdvisor Certificate of Excellence Award.*

eStandby

**THOMAS LUCA JR** - You are Eligible for a Custom Upgrade
Premium rooms may go unsold and can be offered at check-in for as little as **$50** extra per night!

SHOW MY CUSTOM UPGRADE

By clicking this link, you will be redirected to a different website to see your custom upgrade options.

| Selected Room | # Rooms | # Nights | Best Available Rate plus 500pts | Tax | Total for Stay* |
|---|---|---|---|---|---|
| CITY VIEW KING | 1 | 2 | 359.00 USD | 150.52 USD | 868.52 USD |

**ANSWER: Wyndham lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 59, and therefore denies them.**

60. Neither the $359.00 nightly rate, nor the $150.52 "Tax" totals were accurate representations. First, the $359.00 price quote misled Plaintiff because it did not include the $25.00 per night resort fee. The actual nightly cost of renting a room was $384.00, yet Defendants represented that it only cost $359.00 per night to rent a room from their Shelborne hotel. Second, the $150.52 "Tax" total misled plaintiff because it included two $25.00 resort fee charges (for a total of $50.00), which are not taxes, but rather are part of the nightly room rate. By including the resort fee charge in the "Tax" total, Defendants again led Plaintiff to believe that the room rate was lower than it actually was. Further, Defendants led Plaintiff to believe that any resort fee that may have been disclosed was actually a tax rather than part of the actual cost of renting a room from Defendants.

**ANSWER: Wyndham denies the allegations in paragraph 60.**

61. After Plaintiff travelled to Miami and stayed at Defendants' Shelborne hotel, Defendants provided Plaintiff with an Information Invoice.

| Date | Description | Reference | Charges | Credits |
|------|-------------|-----------|---------|---------|
| 05-27-16 | Advance Deposit | | | 409.26 |
| 05-27-16 | Room charge | | 359.00 | |
| 05-27-16 | State Sales Tax 7% | | 25.13 | |
| 05-27-16 | City Tax 4% | | 14.36 | |
| 05-27-16 | County Occ.Tax 3% | | 10.77 | |
| 05-27-16 | Resort Fee | | 25.00 | |
| 05-27-16 | Resort Fee State Sales Tax 7% | | 1.75 | |
| 05-27-16 | Resort Fee City Tax 4% | | 1.00 | |
| 05-27-16 | Resort Fee County Occ. Tax 3% | | 0.75 | |
| 05-28-16 | Room charge | | 359.00 | |
| 05-28-16 | State Sales Tax 7% | | 25.13 | |
| 05-28-16 | City Tax 4% | | 14.36 | |
| 05-28-16 | County Occ.Tax 3% | | 10.77 | |
| 05-28-16 | Resort Fee | | 25.00 | |
| 05-28-16 | Resort Fee State Sales Tax 7% | | 1.75 | |
| 05-28-16 | Resort Fee City Tax 4% | | 1.00 | |
| 05-28-16 | Resort Fee County Occ. Tax 3% | | 0.75 | |
| 05-29-16 | Visa | | | 466.26 |
| | **Total** | | **875.52** | **875.52** |

**ANSWER:** **Wyndham admits that Plaintiff was provided with an invoice after his stay at the Shelborne and states that the invoice speaks for itself. Wyndham lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 61, and therefore denies them.**

62. The Information Invoice, which itemizes all costs charged to Plaintiff, for the first time, stated in a single itemized list that Plaintiff was being charged a per night resort fee in addition to the nightly room rate. Although Defendants' Website included the resort fee charge in the "Tax" charged to Plaintiff, the Information Invoice makes clear that the resort fee is not a tax. Indeed, the state and city taxes that were applied to the $359.00 nightly room rate also are applied to the $25.00 per night resort fee charge. Given that the resort fee itself is taxed, it is clear that the fee is not a tax, but rather, part of the true cost of renting a room from Defendants.

**ANSWER:** **Wyndham denies the allegations in paragraph 62.**

iii. **Defendants' Conduct Deceived Plaintiff and the Class.**

63.     By prominently advertising a nightly room rate that does not include Defendants' per night resort fee charge Defendants deceived Plaintiff and the Class. Defendants further deceived Plaintiff and the Class by misrepresenting the per night room rate charge as a "Tax," rather than part of the true cost of renting a room at Wyndham hotels.

**ANSWER:  Wyndham denies the allegations in paragraph 63.**

64.     The purpose and effect of Defendants' booking process is to deceive and mislead consumers regarding Defendants' true room rates. Indeed, at no time prior to or during actual payment do Defendants present to consumers a straightforward estimate and/or itemization of Defendants' true room rate: 1) on the List Page Defendants advertise to consumers room rates that are substantially lower than the true room rates because the resort fees are not included; 2) on the Room Rates Page, where consumers choose a room based on the advertised rate, Defendants do not include the per night resort fee charge in the prominently advertised "Avg. Nightly Rate"; and 3) on the Check-Out Page, Defendants hide the resort fee and misrepresent it as part of a "Tax," leading consumers to believe that the true cost of the room is the "Wyndham Daily Rate," which does not include the resort fee charge.

**ANSWER:  Wyndham denies the allegations in paragraph 64.**

65.     Defendants' booking process, along with the language and information provided therein, all led Plaintiff, the Class, and similarly situated reasonable consumers to believe that Defendants' room rates are substantially less than they actually are.

**ANSWER:  Wyndham denies the allegations in paragraph 65.**

66.     Defendants fail to advertise the true room rates because Defendants seek to gain a competitive advantage by advertising rooms at lower prices than the competition and because

Defendants know that consumers will rely on the advertised rate in making decisions in selecting Defendants' hotels for stays.

**ANSWER: Wyndham denies the allegations in paragraph 66.**

67.     Given this deception, a reasonable consumer would likely be unaware of the resort fee charge and the true cost of staying at Defendants' hotels.

**ANSWER: Wyndham denies the allegations in paragraph 67.**

68.     Defendants' practice of advertising rooms at prices lower than their true rate understates the true price of booking a room at the Defendants' hotels, and, as a result, is misleading and deceptive.

**ANSWER: Wyndham denies the allegations in paragraph 68.**

69.     By recovering an additional, baseless fee in the form of a resort fee, and misrepresenting that fee as a "Tax," Defendants are able to reduce their advertised room rates by the amount of the resort fee without any negative impact when price-conscious consumers compare rates across hotels.

**ANSWER: Wyndham denies the allegations in paragraph 69.**

70.     Defendants' conduct has harmed Plaintiff and the Class by misleading and deceiving them into purchasing rooms at Defendants' hotels. Defendants' conduct also has harmed Plaintiff and the Class by preventing them from accurately analyzing the market for hotel rooms. By initially quoting room rates without mandatory resort fees, and passing the resort fees off as a "Tax," Defendants have created a misleading perception in the mind of Plaintiff and the Class. This deception led Plaintiff and the Class to over-value Defendants' hotel rooms. As such,

Plaintiff and the Class purchased hotel rooms they otherwise would not have purchased and have been harmed as a result.

**ANSWER: Wyndham denies the allegations in paragraph 70.**

71.     Defendants' conduct also has harmed competition generally. Because Defendants' conduct has created a false perception in relation to its hotel rooms, consumers have undervalued comparable hotel operators that include all fees and costs in the initial price quote, and accurately represent the true cost of renting a room. Thus, Defendants' conduct has deceived consumers to the false belief that Defendants' hotel rooms are superior to comparable competitors. This of course is not the case.

**ANSWER: Wyndham denies the allegations in paragraph 71.**

72.     Plaintiff brings this action to recover for the deception and attendant harm Defendants have caused through their booking process, and seeks all relief mandated and allowed by statute.

**ANSWER:  Wyndham denies the allegations in paragraph 72 and denies that Plaintiff has alleged facts that entitle him to relief.**

**E.      Defendants Bind Consumers To Illegal Contract Terms During The Booking Process**

73.     In addition to deceiving consumers into purchasing hotel rooms, Defendants also bind consumers to illegal contract terms during the booking process.

**ANSWER: Wyndham denies the allegations in paragraph 73.**

74.     According to Defendants, consumers who visit their Websites to book rooms, automatically are bound and agree to Defendants' Terms of Use. As a result, by accessing and

using Defendants' Websites to book a room, Plaintiff and the Class became bound to the Terms of Use.

**ANSWER:** **Wyndham states that Wyndham's Terms of Use speaks for itself. Wyndham denies the remaining allegations in paragraph 74.**

75. Defendants' Terms of Use contain provisions that violate clearly established legal rights and responsibilities under New Jersey law.

**ANSWER: Wyndham denies the allegations in paragraph 75.**

76. The Terms of Use state, "IN NO EVENT SHALL WE NOR OUR AFFILIATED OR RELATED ENTITIES (INCLUDING PROVIDERS), NOR ANY OF OUR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS, NOR ANY PERSON OR ENTITY INVOLVED IN THE CREATION, PRODUCTION AND DISTRIBUTION OF THIS WEB SITE, BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES WHETHER ARISING UNDER CONTRACT, WARRANTY, OR TORT (INCLUDING NEGLIGENCE) OR ANY OTHER THEORY OF LIABILITY, REGARDLESS OF WHETHER WE KNEW OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES, INCLUDING WITHOUT LIMITATION FROM THE USE OR ATTEMPTED USE OF THIS WEB SITE OR ANY OTHER LINKED SITE."

**ANSWER: The allegations in paragraph 76 purport to characterize the terms of a written document, the terms of which speaks for itself. Therefore no response is required. To the extent a response is required, Wyndham denies the allegations in paragraph 76, except to state that the Terms of Use speaks for itself.**

77.     This provision violates clearly established legal rights of Plaintiff and the Class, and legal responsibilities of Defendants under New Jersey law.

**ANSWER:  Wyndham denies the allegations in paragraph 77.**

78.     Under New Jersey common law, persons and entities have a duty to avoid unnecessary risk of personal and economic injury to others. Persons harmed by negligent acts have a clearly established right to recover full damages under New Jersey common law. By precluding certain damages stemming from Defendants' negligent conduct, the Terms of Use violate Plaintiff's clearly established legal right to recover such damages and Defendants' clearly established legal responsibility to refrain from engaging in conduct that causes such damages.

**ANSWER:  The allegations in paragraph 78 contain legal conclusions, and therefore no response is required.  To the extent any further response is required, Wyndham denies the allegations in paragraph 78.**

79.     Under New Jersey's Punitive Damages Act (the "PDA") persons are granted the right to recover punitive damages when they prove "that the harm suffered was the result of the defendant's acts or omissions and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. § 2A:15-5.12. By precluding recovery of punitive damages, the Terms of Use violate Plaintiff's clearly established legal right to recover such damages and Defendants' clearly established legal responsibility to refrain from engaging in conduct that justifies such damages.

**ANSWER:  The allegations of paragraph 79 contain legal conclusions and purport to characterize statutes, the terms of which speak for themselves.  Therefore, no response is**

**required.  To the extent any further response is required, Wyndham denies the allegations in paragraph 79.**

80.     Under the CFA, N.J.S.A. § 56:8–2 *et seq*., persons are granted the right to recover for fraudulent and deceptive conduct.

**ANSWER:  The allegations of paragraph 80 contain legal conclusions and purport to characterize statutes, the terms of which speak for themselves.  Therefore, no response is required.  To the extent any further response is required, Wyndham denies the allegations in paragraph 80.**

81.     The CFA prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby ... [.]" N.J.S.A. § 56:8–2.

**ANSWER:  The allegations of paragraph 81 contain legal conclusions and purport to characterize statutes, the terms of which speak for themselves.  Therefore, no response is required.  To the extent any further response is required, Wyndham denies the allegations in paragraph 81.**

82.     The CFA entitles any person who suffers any ascertainable loss of money or property as a result of the use or employment by another person of any method, act, or practice

declared unlawful under the CFA to recover treble damages, attorneys' fees, filing fees, reasonable costs of suit, and any other appropriate legal or equitable relief. N.J.S.A. § 56:8-19.

**ANSWER:  The allegations of paragraph 82 contain legal conclusions and purport to characterize statutes, the terms of which speak for themselves.  Therefore, no response is required.  To the extent any further response is required, Wyndham denies the allegations in paragraph 82.**

83.    The allegations of paragraph 82 contain legal conclusions and purport to characterize statutes, the terms of which speak for themselves.  Therefore, no response is required.  To the extent any further response is required, Wyndham denies the allegations in paragraph 82.By precluding certain categories of damages, the Terms of Use violate Plaintiff's clearly established legal right to recover such damages for fraudulent, deceptive and misleading conduct, and Defendants' legal responsibility to refrain from engaging in fraud and deception.

**ANSWER:  Wyndham denies the allegations in paragraph 83.**

84.    The Terms of Use also state, "BY WAY OF EXAMPLE ONLY, WE AND RELATED PERSONS AND ENTITIES SHALL NOT BE RESPONSIBLE OR LIABLE FOR ANY CLAIM OR DAMAGE ARISING FROM: FAILURE OF PERFORMANCE, ERROR, OMISSION, INTERRUPTION, DELETION, DEFECT, DELAY IN OPERATION, COMPUTER VIRUS, THEFT, DESTRUCTION, UNAUTHORIZED ACCESS TO OR ALTERATION OF PERSONAL RECORDS, OR THE RELIANCE UPON OR USE OF CONTENT, INFORMATION, OPINIONS OR OTHER MATERIALS APPEARING ON THIS WEB SITE."

**ANSWER:** The allegations in paragraph 84 purport to characterize the terms of a written document, the terms of which speaks for themselves. Therefore, no response is required. To the extent a response is required, Wyndham denies the allegations in paragraph 84, except to state that the Terms of Use speaks for itself.

85. This provision violates clearly established legal rights of Plaintiff and the Class, and legal responsibilities of Defendants under New Jersey law.

**ANSWER:** Wyndham denies the allegations in paragraph 85.

86. This provision violates Plaintiff's and the Class's clearly established legal right to recover from Defendants for tortious conduct that causes personal or economic injury and to recover damages for Defendants' violations of the CFA. This provision also violates Plaintiff's and the Class's clearly established legal right to seek punitive damages under the PDA for Defendants' malicious, wanton or willful misconduct. Likewise, this provision violates Defendants' duty to refrain from causing personal or economic injury through its own negligent, reckless, willful, malicious or wanton misconduct, and Defendants' clearly established legal responsibility to refrain from engaging in deception and fraud.

**ANSWER:** Wyndham denies the allegations in paragraph 86.

87. The Terms of Use further state, "You agree to indemnify, defend and hold Us and the Providers, Our and their officers, directors, employees, affiliates, agents, licensors, and suppliers harmless from and against any and all claims, demands, actions, costs, liabilities, losses and damages of any kind (including attorneys' fees) resulting from Your use of this Web Site[.]"

**ANSWER:** The allegations in paragraph 87 purport to characterize the terms of a written document, the terms of which speaks for themselves. Therefore, no response is

**required. To the extent a response is required, Wyndham denies the allegations in paragraph 87, except to state that the Terms of Use speaks for itself.**

88.     This provision violates Plaintiff's and the Class's clearly established legal right to recover from Defendants for tortious conduct that causes personal or economic injury and to recover damages for Defendants' violations of the CFA. This provision also violates Plaintiff's and the Class's clearly established legal right to seek punitive damages under the PDA for Defendants' malicious, wanton or willful misconduct. Likewise, this provision violates Defendants' duty to refrain from causing personal or economic injury through its own negligent, reckless, willful, malicious or wanton misconduct, and Defendants' clearly established legal responsibility to refrain from engaging in deception and fraud.

**ANSWER: Wyndham denies the allegations in paragraph 88.**

89.     Plaintiff brings this action to recover for the deception and attendant harm Defendants' have caused by their oppressive Terms of Use to which they have bound all consumers who access and use their Websites, and seeks all relief mandated and allowed by statute.

**ANSWER: Wyndham denies the allegations in paragraph 89 and denies that Plaintiff has alleged facts that entitle him to relief.**

## CLASS ALLEGATIONS

90.     Plaintiff brings this class action on behalf of himself and all others similarly situated pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

**ANSWER:** **Wyndham denies that Plaintiff can maintain this action as a class action, denies that any class can be certified, and denies all remaining allegations in paragraph 90.**

91.    Plaintiff seeks to certify the following classes:

**RESORT FEE CLASS**

All United States citizens who have booked a hotel room through the Websites within the applicable statute of limitations and were charged one or more resort fees.

**TERMS OF USE CLASS**

All United States citizens who have booked a hotel room through the Websites within the applicable statute of limitations.

**ANSWER:** **Wyndham denies that Plaintiff can maintain this action as a class action, denies that any class can be certified, and denies all remaining allegations in paragraph 91.**

92.    Excluded from the Class are Defendants and its officers, directors and employees, the Court, the Court's immediate family and all Court staff, and Plaintiff's attorneys and their immediate family members.

**ANSWER:** **Wyndham denies that Plaintiff can maintain this action as a class action, denies that any class can be certified, and denies all remaining allegations in paragraph 92.**

93.    Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. On information of belief, hundreds, if not thousands of individuals have booked a room using Defendants' Websites within the applicable statute of limitations. The disposition of the individual claims of the respective class

members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

**ANSWER: Wyndham denies that Plaintiff can maintain this action as a class action, denies that any class can be certified, and denies all remaining allegations in paragraph 93.**

94.     Ascertainability: The class is ascertainable because, on information and belief, Defendants keep and collect the information of each class member in a detailed electronic database, and record when class members book a room using the Websites.

**ANSWER: Wyndham denies that Plaintiff can maintain this action as a class action, denies that any class can be certified, and denies all remaining allegations in paragraph 94.**

95.     Typicality: Plaintiff's claims are typical of the claims of the members of the class. The claims of the Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct. The claims of Plaintiff and the Class arise from the same booking process, which is uniform across Defendants' Websites, and provisions of the Terms of Use, which uniformly are displayed in the Terms of Use. As such, the claims of Plaintiff and the Class rise and fall together and are typical of one another.

**ANSWER: Wyndham denies that Plaintiff can maintain this action as a class action, denies that any class can be certified, and denies all remaining allegations in paragraph 95.**

96.     Common Questions of Fact and Law Predominate: There are numerous question of law or fact common to all class members. For example, whether Defendants' Websites, as a

whole, would make a false or misleading impression in the mind of an ordinary and unsuspecting consumer is a question common to all Resort Fee Class members. Similarly, whether Defendants failed to adequately disclose material terms of the transactions entered into between the Resort Fee Class members and Defendants is common to all class members, and requires common proof. In regards to the Terms of Use Class, whether the provisions of Defendants' Terms of Use violate clearly established legal rights and responsibilities is a question common to all class members, and this question is susceptible to a common answer. Similarly, whether the Terms of Use is a consumer contract or notice is a question common to all class members, and this question is susceptible to a common answer. These questions and others like them predominate over individual issues. The same evidence needed to prove Plaintiff's individual claims will be used to prove the claims of all class members.

**ANSWER:** **Wyndham denies that Plaintiff can maintain this action as a class action, denies that any class can be certified, and denies all remaining allegations in paragraph 96.**

97.    Adequacy of Representation: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of complex consumer class action litigation.

**ANSWER:** **Wyndham denies that Plaintiff can maintain this action as a class action, denies that any class can be certified, and denies all remaining allegations in paragraph 97.**

98.     Superiority: The injury sustained by each class member, while meaningful on an individual basis, is not of such magnitude that it is economically feasible to prosecute individual actions against Defendants. Even if it were economically feasible, requiring myriad injured plaintiffs to file individual suits would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments. By contrast, class treatment will present far fewer management difficulties and provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

**ANSWER:   Wyndham denies that Plaintiff can maintain this action as a class action, denies that any class can be certified, and denies all remaining allegations in paragraph 98.**

99.     Class certification also is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

**ANSWER:   Wyndham denies that Plaintiff can maintain this action as a class action, denies that any class can be certified, and denies all remaining allegations in paragraph 99.**

100.    Choice of Law: New Jersey law is applicable to Plaintiff and all Class members because Defendants' Terms of Use, to which all persons who visit and use Defendants' Websites are bound, states, "You agree that these Terms and Your use of the Web Site shall be governed in all respect by the internal substantive laws of the State of New Jersey without regard to conflict of laws provisions[.]" New Jersey law also is applicable to Plaintiff and all Class

members because Defendants Websites are operated from offices within New Jersey. As a result, the deceptive conduct and the oppressive Terms of Use emanate from New Jersey.

**ANSWER:  Wyndham denies that New Jersey law is applicable.  Wyndham states that the Terms of Use speaks for itself, and no further response is required.  To the extent any further response is required, Wyndham denies any remaining allegations in paragraph 100.**

## CAUSES OF ACTION

### COUNT I
### Violation of Consumer Fraud Act,
### N.J.S.A. §§ 56:8–1 *et seq.*

101.    The allegations contained in the previous paragraphs are incorporated by reference. This Count is brought on behalf of the Resort Fee Class.

**ANSWER:  Wyndham incorporates its responses to paragraphs 1 through 100 above as if fully restated herein.**

102.    The CFA was designed to promote the disclosure of relevant information to enable the consumer to make intelligent decisions in the selection of products and services.

**ANSWER:  The allegations in paragraph 102 are legal conclusions, and therefore no response is required.  To the extent any further response is required, Wyndham denies the allegations in paragraph 102.**

103.    Defendants and Plaintiff are "persons" within the meaning of the CFA. N.J.S.A. § 56:8-1(d).

**ANSWER:  The allegations in paragraph 103 are legal conclusions, and therefore no response is required.  To the extent any further response is required, Wyndham denies the allegations in paragraph 103.**

104.    Defendants' advertising and sale of hotel rooms constitute "advertising" and "sale" of "merchandise" within the meaning of the CFA. N.J.S.A. § 56:8-1(a), (c) and (e).

**ANSWER:  The allegations in paragraph 104 are legal conclusions, and therefore no response is required.  To the extent any further response is required, Wyndham denies the allegations in paragraph 104.**

105.    Defendants' practices described above constitute as "unconscionable commercial practice[s], deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission," and therefore, are unlawful under the CFA N.J.S.A. § 56:8-2.

**ANSWER:  Wyndham denies the allegations in paragraph 105.**

106.    Plaintiff and the class members have suffered an ascertainable loss of money and property as a result of Defendants' unlawful practices as alleged herein.

**ANSWER:  Wyndham denies the allegations in paragraph 106.**

107.    Pursuant to N.J.S.A. § 56:8-19, Plaintiff, on behalf of himself and the class, seeks treble damages, reasonable attorneys' fees, filing fees, reasonable costs of suit, and any other appropriate legal or equitable relief.

**ANSWER:  Wyndham denies that Plaintiff is entitled to relief.**

## COUNT II
### Violation of Truth-in-Consumer Contract, Warranty and Notice Act
### N.J.S.A. §§ 56:12-14, *et seq.*

108.     The allegations contained in the previous paragraphs are incorporated by reference. This Count is brought on behalf of the Terms of Use Class.

**ANSWER:   Wyndham incorporates its responses to paragraphs 1 through 107 above as if fully restated herein.**

109.     The TCCWNA was enacted over thirty years ago because "[f]ar too many consumer contracts, warranties, notices and signs contain provisions which clearly violate the rights of consumers. Even though these provisions are legally invalid or unenforceable, their very inclusion in a contract, warranty, notice or sign deceives a consumer into thinking that they are enforceable and for this reason the consumer often fails to enforce his rights." Statement, Bill No. A1660, 1981 N.J. Laws, Chapter 454, Assembly No. 1660, page 2.

**ANSWER:   Wyndham states that TCCWNA speaks for itself.  The allegations in paragraph 109 are legal conclusions and purport to characterize statutes, the terms of which speak for themselves.  Therefore, no response is required.  To the extent any further response is required, Wyndham denies the allegations in paragraph 109.**

110.     The primary goal of the TCCWNA is to prevent confusion and deception among consumers as to both their legal rights, and the responsibilities of businesses operating in New Jersey. TCCWNA accomplishes this goal by prohibiting the use of illegal terms in consumer contracts and notices.

**ANSWER:  Wyndham states that TCCWNA speaks for itself.  The allegations in paragraph 110 are legal conclusions, therefore no response is required.  To the extent any further response is required, Wyndham denies the allegations in paragraph 110.**

111.    The New Jersey legislature has set forth the following examples of provisions that violate clearly established legal rights and responsibilities under the TCCWNA: "Examples of [] provisions [in violation of the TCCWNA] are those that deceptively claim that a seller or lessor is not responsible for any damages caused to a consumer, even when such damages are the result of the seller's or lessor's negligence. These provisions provide that the consumer assumes all risks and responsibilities, and even agrees to defend, indemnify and hold harmless the seller from all liability." Statement, Bill No. A1660, 1981 N.J. Laws, Chapter 454, Assembly No. 1660, page 2.

**ANSWER:  The allegations in paragraph 111 purport to characterize the terms of a statute, the terms of which speaks for itself.  Therefore no response is required.  To the extent a response is required, Wyndham denies the allegations in paragraph 111, except to state that the TCCWNA speaks for itself.**

112.    Defendants are a "seller, lessor, creditor, lender or bailee" under the TCCWNA. N.J.S.A. § 56:12-15.

**ANSWER:  The allegations in paragraph 112 are legal conclusions, and therefore no response is required.  To the extent any further response is required, Wyndham denies the allegations in paragraph 112.**

113.    Plaintiff is a "consumer" under the TCCWNA. *Id.*

**ANSWER:** The allegations in paragraph 113 are legal conclusions, and therefore no response is required. To the extent any further response is required, Wyndham denies the allegations in paragraph 113.

114. The Terms and Use are a "consumer contract" or "consumer notice or sign" under the TCCWNA. N.J.S.A. §§ 56:12-1 and 56:12-15.

**ANSWER:** The allegations in paragraph 114 are legal conclusions, and therefore no response is required. To the extent any further response is required, Wyndham denies the allegations in paragraph 114.

115. The Terms and Conditions violate the TCCWNA because they include provisions that violate clearly established legal rights and responsibilities. N.J.S.A. § 56:12-15.

**ANSWER:** Wyndham denies the allegations in paragraph 115.

116. The Terms and Conditions contain provisions, as detailed above, that purport to disclaim liability for harm caused 1) by Defendants' negligence, 2) by Defendants' acts that violate the CFA, and 3) by Defendants' malicious, willful or wanton misconduct. The Terms and Conditions also contain provisions that preclude claims for punitive damages. *Id.*

**ANSWER:** Wyndham states that Wyndham's Terms of Use speak for itself. Wyndham denies the remaining allegations in paragraph 116.

117. Pursuant to N.J.S.A. § 56:12-17, Plaintiff and the Class are entitled to a civil penalty of not less than $100.00, or for actual damages, or both, together with reasonable attorney's fees and court costs, and any additional relief the court deems appropriate.

**ANSWER:** Wyndham denies the allegations in paragraph 117 and denies that Plaintiff is entitled to relief.

## PRAYER FOR RELIEF

118.    Wherefore, Plaintiff, on behalf of himself and on behalf of the other members of

the Class, requests that this Court award relief against Defendants as follows:

      a.      An Order certifying the Resort Fee and Terms of Use classes proposed by Plaintiff, and naming Plaintiff as class representative of both classes and appointing his counsel as class counsel of both classes;

      b.      Injunctive relief requiring Defendants to halt its deceptive advertising campaign, enjoining Defendants from engaging in the unlawful practices alleged herein, and ordering Defendants to engage in corrective advertising;

      c.      Injunctive relief requiring the removal from the Terms of Use the language declared in violation of N.J.S.A. § 56:12-15;

      d.      Awarding Plaintiff and the class members statutory damages, actual damages, and/or treble damages;

      e.      Awarding attorneys' fees, filling fees and costs of suit; and

      f.      The provision of whatever other relief the Court deems just, equitable and appropriate.

**ANSWER:  Wyndham denies that Plaintiff and any putative class are entitled to any relief.**

## AFFIRMATIVE DEFENSES

**In addition to the foregoing responses, Wyndham generally denies liability for all claims alleged in the Complaint, denies each allegation that has not been admitted, and asserts the following defenses to the claims alleged in Plaintiff's Complaint.  In so doing, Wyndham does not assume the burden of proof for these defenses where the applicable law provides otherwise.**

**FIRST DEFENSE:** Plaintiff's claims and the claims of any putative class are barred, in whole or in part, by the applicable statute of limitations. The statute of limitations for both the CFA and TCCWNA is six years.

**SECOND DEFENSE:** Plaintiff's claims and the claims of any putative class are barred because plaintiff and any putative class members have affirmed, ratified, acquiesced, or otherwise consented to the actions of the defendants. Before booking a room through Wyndham's websites, Plaintiff was required to check a box that indicated he had read and accepted the terms and conditions on the checkout page, including the total cost of the reservation.

**THIRD DEFENSE:** Plaintiff's claims and the claims of any putative class are barred, in whole or in part, as a result of Plaintiff's and putative class members' course of conduct. After numerous disclosures, Plaintiff consented to the terms and conditions on Wyndham's websites and completed the online booking process.

**FOURTH DEFENSE:** Plaintiff's claims and the claims of any putative class are barred, in whole or in part, by the doctrine of voluntary payment. Plaintiff has not demonstrated any fraud or duress that would exempt him from his legal obligation to pay his hotel bill after voluntarily booking a room and completing his stay at a Wyndham-branded resort.

**FIFTH DEFENSE:** Plaintiff's claims and the claims of any putative class are barred, in whole or in part, by the doctrine of equitable estoppel. Wyndham relied on Plaintiffs' representations that he understood the terms and conditions and voluntarily consented to them, and he is therefore estopped from claiming that he did not understand or consent to those conditions.

**SIXTH DEFENSE:** Plaintiff's claims and the claims of any putative class are barred, in whole or in part, by the doctrine of waiver. Through his actions, Plaintiff waived the right to challenge the disclosures on Wyndham's websites.

**ADDITIONAL DEFENSES AS TO DAMAGES/REMEDIES**

**SEVENTH DEFENSE:** Plaintiff's claims and the claims of any putative class are barred, in whole or in part, because neither Plaintiff nor the putative class has suffered any actual injury or damage as a result of any conduct alleged as a basis of this lawsuit. Plaintiff has not alleged that he received anything less than the full value of his hotel booking, nor has he alleged any out-of-pocket loss because of his purchase.

**EIGHTH DEFENSE:** Plaintiff's claims for damages and other relief are barred, in whole or in part, because they are speculative and because it is impossible to ascertain and allocate those alleged damages. Plaintiff has not alleged that he received anything less than the full value of his hotel booking, nor has he alleged any out-of-pocket loss because of his purchase.

**NINTH DEFENSE:** Any damages or other relief recovered by the plaintiff or putative class from defendants must be limited by the applicable statutory ceilings on recoverable damages under the CFA and TCCWNA, or by other limitations on recovery imposed by law.

**TENTH DEFENSE:** To the extent punitive damages are sought, Plaintiff's punitive damages claims against defendants (1) have no basis in law or fact; (2) are not recoverable because the allegations of the Complaint are legally insufficient to support a claim for punitive damages against defendants; (3) cannot be sustained because the laws regarding the standards for determining liability for and the amount of punitive damages fail to give

defendants prior notice of the conduct for which punitive damages may be imposed and the severity of the penalty that may be imposed, and are void for vagueness in violation of defendants' Due Process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and analogous provisions state constitutional provisions; and (4) cannot be sustained because any award of punitive damages would violate defendants' rights guaranteed by the Fourth, Fifth, and Sixth Amendments as incorporated into the Fourteenth Amendment to the United States Constitution and would be improper under any other applicable law.

## RESERVATION OF RIGHTS AND DEFENSES

Wyndham has not knowingly or intentionally waived any applicable defenses and reserve the right to assert and rely on such other applicable defenses as may become available or apparent during discovery proceedings. Wyndham also reserves the right to amend its Answer and/or Defenses accordingly, and/or withdraw defenses that it determines to be inapplicable during the course of subsequent discovery.

Dated: March 15, 2017

Respectfully submitted,

*/s/ K. Winn Allen*

David A. Strassburger (Pa. I.D. No. 76027)
STRASSBURGER MCKENNA
  GUTNICK & GEFSKY
444 Liberty Avenue, Suite 2200
Pittsburgh, PA 15222
Telephone: (412) 281-5423
dstrassburger@smgglaw.com

Eugene F. Assaf, P.C. (Pa. I.D. No. 57803)
K. Winn Allen (admitted *pro hac vice*)
Ronald K. Anguas, Jr. (admitted *pro hac vice*)
Zachary A. Avallone (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth Street NW
Washington, DC 20005
Telephone: (202) 879-5000
winn.allen@kirkland.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on March 15, 2017, I electronically filed the foregoing with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

*/s/ K. Winn Allen*
K. Winn Allen
Counsel for Defendants