IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS LUCA JR., individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>  v.<br><br>WYNDHAM HOTEL GROUP, LLC, and WYNDHAM HOTELS AND RESORTS, LLC,<br><br>                Defendants. | Case No. 16-cv-746-MRH |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Thomas Luca, Jr. files this supplemental memorandum in opposition to Defendants' motion for judgment on the pleadings, or in the alternative, for reconsideration of the Court's February 15, 2017 order. (ECF No. 87). Plaintiff maintains that he has standing to maintain his claim under the New Jersey Truth in Consumer Contract, Warranty, and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14 *et seq.*, and that Defendants' motion should be denied.

As explained in Plaintiff's response in opposition to the motion (ECF No. 93), the New Jersey Supreme Court's decision in *Spade v. Select Comfort Cop.*, 181 A.3d 969 (N.J. 2018) does not require this Court to reconsider or revise its original opinion denying Defendants' motion to dismiss the TCCWNA claim. The *Spade* court held that that term "aggrieved consumer" as it appears in the statute "denotes a consumer who has suffered some form of harm as a result of the defendant's conduct." 181 A.3d at 980. A consumer is not "aggrieved" by a seller's mere offering or displaying of illegal contract terms, *id.* at 989, but the "harm" that can "aggrieve" a customer does not need to be monetary in nature or significant enough to serve as a basis for a provable damages award. *Id.* at 980.

1

The *Spade* court's analysis and holding do not at all conflict with this Court's conclusion that a plaintiff may be aggrieved for TCCWNA purposes if terms within a seller's contract illegally threaten to foreclose a consumer's non-TCCWNA legal claims, such as Plaintiff's New Jersey Consumer Fraud Act claim here. *See* Mem. Op. of Feb. 15, 2017 at 8–9 (ECF No. 43) ("[T]he present case involves a tangible injury, or risk of injury – to Plaintiffs asserted right to redress under the CFA"). When the *Spade* court analyzed the meaning of "aggrieved," it quoted the definition of "aggrieved party" in the 1979 edition of *Black's Law Dictionary*: "one whose legal right is invaded by an act complained of…" *Spade*, 181 A.3d at 980. At the time Plaintiff filed his complaint, his right to pursue a CFA claim was potentially threatened—"invaded"—by the plain terms of Defendants' Terms of Use. *See* Pl's. Mem in Opp. at 9–14 (ECF No. 93). Unlike the plaintiff in *Spade*, Plaintiff here actually suffered a monetary loss in his dealings with Defendants, and their Terms of Use threatened to deny him a recovery for his substantive CFA claim.

That threat is enough to qualify Plaintiff as an aggrieved consumer who can pursue a TCCWNA claim. Defendants' decisions—after the complaint was filed—to advance narrow interpretations of the Terms of Use, and disavow enforcement of the Terms against Plaintiff with respect to his CFA claim, come too late to affect Plaintiff's statutory standing under TCCWNA. The statute's applicability does not turn on whether a defendant chooses to disavow provisions in its own contracts *after* being sued. If illegal provisions potentially stand in the way of a plaintiff's assertion of a non-TCCWNA claim, the plaintiff is aggrieved at the time the suit is filed, and that is the only point in time relevant to the analysis. In Plaintiff's case, he did not know at the time he filed his complaint whether Defendants would invoke their Terms and argue

for a broad interpretation in an attempt to defeat his CFA claim, or do what they have done here, disavowing and narrowly construing their Terms in an effort to avoid liability under TCCWNA.

The purpose of TCCWNA was not to merely provide a statutory defense against enforcement of illegal terms; instead, the primary purposes of the law were to deter sellers from including provisions that could deceive consumers regarding their rights in the first instance, and to punish those sellers whose illegal provisions connect to *any* type of harmful impact on consumers. *See Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 549 (N.J. 2013) (quoting *Kent Motor Cars, Inc. v. Reynolds & Reynolds Co.*, 207 N.J. 428, 457, 25 A.3d 1027 (2011)); *see also Spade*, 181 A.3d at 980 ("If, for example, a furniture seller fails to timely deliver a consumer's furniture, and the consumer would have sought a refund had he or she not been deterred by the "no refunds" language … that consumer may be an 'aggrieved consumer'").

Defendants' overextension of *Spade*, if adopted by this Court, would drastically undermine the purpose and effectiveness of TCCWNA by permitting sellers to fully enjoy the deceptive, substantive-claim-deterring effects of illegal provisions (such as disclaimers of liability), just so long as the sellers retreat from their illegal provisions at some point after a plaintiff files a lawsuit. Under Defendants' reasoning, a seller could even go as far as to invoke an illegal disclaimer provision in pending litigation, and if that defense failed, the defendant could subsequently move to dismiss an accompanying TCCWNA claim, arguing that the plaintiff was not actually "harmed" by the provision since the court did not enforce it. There is no support in *Spade* or the statute for such a narrow scope of liability, and it is hard to envision how any TCCWNA claim could ever be prosecuted if Defendants' escape hatch is legitimized.

The TCCWNA landscape has not been further altered by the case Defendants submitted as supplemental authority, *Patterson v. Forever 21, Inc.*, No. 16-05087, 2018 WL 5313920

3

(D.N.J. Oct. 26, 2018). The *Patterson* decision is a straightforward application of *Spade* and offers no additional support for Defendants' motion. Like in *Spade*, the sole claim in *Patterson* was a standalone TCCWNA violation unaccompanied by **any harm** other than receipt of the illegal provisions:

> Specifically, like the plaintiffs in *Spade*, [p]laintiff has not alleged that she was prevented from returning the items or otherwise pursuing any remedies relating to the purchased items or that [d]efendant attempted to enforce the T&C Provisions to [p]laintiff's detriment. Plaintiff's allegations mirror the hypothetical consumer, in *Spade*, who entered into a sales contract, that contained a provision allegedly violating a New Jersey statute, but received timely delivery of conforming goods.

*Patterson*, 2018 WL 5313920 at *6. Plaintiff Luca has a claim of harm that Spade and Patterson did not have. Luca suffered monetary harm as a result of Defendants' CFA violation, and his pursuit of remedies under the CFA was facially threatened by Defendants' Terms, which violate TCCWNA. In light of Plaintiff's alleged monetary injury and the threat posed by the plain language of the Terms, Defendants' *post hoc* retreat from applying or enforcing those Terms should not alter Plaintiff's status as an aggrieved consumer at the time he filed his complaint.

Plaintiff respectfully requests that the Court deny Defendants' motion for judgment on the pleadings or reconsideration with respect to the TCCWNA claim.

Dated: December 6, 2018         Respectfully submitted,

By: /s/ *Gary F. Lynch*
Gary F. Lynch
Jamisen A. Etzel
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
T: 412-322-9243
F: 412-231-0246
glynch@carlsonlynch.com
jetzel@carlsonlynch.com

*Counsel for Plaintiff*

4

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed on December 6, 2018 with the Clerk of Court for the Western District of Pennsylvania using the CM/ECF system, which will send notice of filing to the email addresses for all counsel listed on the Electronic Mail Notice list, including counsel of record for all parties.

> */s/ Gary F. Lynch*
> Gary F. Lynch