IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| THOMAS LUCA, JR., | ) |
|---|---|
| Plaintiff, | ) ) ) |
| v. | ) 2:16-cv-00746 ) |
| WYNDHAM WORLDWIDE CORPORATION ET AL, | ) ) ) ) |
| Defendants. | ) ) |

## OPINION

**Mark R. Hornak, Chief United States District Judge.**

Pending before the Court is a Motion for Judgment on the Pleadings, or in the alternative, Motion for Reconsideration filed by Defendants Wyndham Hotel Group, LLC, and Wyndham Hotels and Resorts, LLC (collectively, "Wyndham"). (Mot., ECF No. 87.) The matter has been fully briefed, and the Court held a telephonic oral argument. (ECF Nos. 88, 93, 94, 114, 131, 132, 144.) For the reasons that follow, Wyndham's Motion is granted.

### I. Background

Plaintiff Thomas Luca ("Plaintiff") filed his Class Action Complaint on June 6, 2016. (ECF No. 1.) Plaintiff, on behalf of himself and a purported class, avers that a hotel reservation website for which Wyndham is responsible did not adequately disclose the total costs associated with booking a hotel room, thereby violating the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1, et seq.[1] (Op., ECF No. 43, at 1.) Plaintiff also avers that the website's Terms

---

[1] Specifically, the Complaint alleges that the price displayed on the website in bold, large-font and purported to be the "nightly rate" does not incorporate a daily mandatory "resort fee." According to Plaintiff, because Wyndham fails to explain that the resort fee constitutes part of

1

of Use violate the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. § 56:12-14, et seq. (*Id.*) He avers that consumers who use the booking website are automatically deemed to agree to the Terms of Use, which contain limitations on Wyndham's liability. (*Id.* at 8.)[2] Plaintiff alleges that the effect of the Terms of Use is that it deceives consumers into thinking that the provisions are enforceable and deters them from enforcing rights that are otherwise provided under the law. (Compl. ¶ 9–11.) Plaintiff, however, does not allege that the Terms of Use caused him any actual harm in his hotel booking process, his hotel stay, or the events leading up to the filing of his Complaint. Plaintiff has not amended his Complaint since the initiation of this suit to add any allegations of specific harm stemming from the Terms of Use.

Wyndham responded to the Complaint with a motion to dismiss on August 15, 2016 (ECF No. 19), in which it argued that Plaintiff's second claim, the TCCWNA claim, fails because Plaintiff suffered no injury from the Terms of Use and thus lacked constitutional and statutory standing to sue. The Court denied the motion to dismiss in an Opinion dated February 15, 2017, and an amended Order dated April 19, 2017. (ECF Nos. 43, 61.) The Court concluded that Plaintiff had shown constitutional standing based on the existence of "a tangible injury, or

---

the true cost of renting a hotel room, in a practice known as "drip pricing," the advertised price misleads consumers to believe that the additional resort fee is simple a "tax," which is a deceptive act that impacts consumers' decision-making. (Compl. ¶ 1–8.)

[2] Specifically, Plaintiff alleges that specific provisions in the Terms of Use are in direct contravention of rights afforded to Plaintiff under New Jersey law. According to Plaintiff's Complaint, those provisions:
    1) disclaim liability for claims brought for Defendants' negligent, willful, malicious and wanton misconduct;
    2) bar claims for personal and economic injury and punitive damages; and
    3) ban consumers from asserting claims against Defendants for deceptive and fraudulent conduct.
(Compl. ¶ 10.)

2

*risk* of injury – to Plaintiff's asserted right to redress under the CFA." (Op. at 9 (emphasis added).) The Court also rejected Wyndham's argument that Plaintiff was not an "aggrieved consumer" statutorily empowered to bring suit. (*Id.* at 10.) Absent direct guidance from the New Jersey Supreme Court on the definition of "aggrieved consumer," the Court, noting that the TCCWNA is a remedial statute entitled to a broad interpretation, concluded that Plaintiff had adequately pled that he was in fact "aggrieved" for the same reasons that he had constitutional standing. (*Id.*) The denial of Wyndham's motion to dismiss was without prejudice to Wyndham reasserting its standing arguments at a later stage in the case. (Op., ECF No. 43, at 1–2.) Wyndham eventually answered the Class Action Complaint. (ECF No. 53.)

That later stage is now, and that direct guidance from the New Jersey Supreme Court has arrived. On April 16, 2018, the New Jersey Supreme Court answered a certified question from our Court of Appeals on what it means to be an "aggrieved consumer" under the TCCWNA. *Spade v. Select Comfort Corp.*, 181 A.3d 969 (N.J. 2018). Wyndham filed the pending Motion, ECF No. 87, seeking dismissal of the TCCWNA claim for lack of statutory standing on the basis that Plaintiff is not an "aggrieved consumer."[3]

Because Wyndham has already filed its Answer to Plaintiff's Complaint (ECF No. 53), and because the Court's denial of the motion to dismiss was without prejudice to Wyndham re-asserting its arguments at a later stage (Op. at 10), the Court will construe the pending Motion as one for judgment on the pleadings and not one for reconsideration.

---

[3] For the reasons stated herein, to the extent the determinations set forth in this Opinion are at variance with those in the Court's prior Opinion and Order, ECF Nos. 43 and 61, this Opinion and its accompanying Order supersede the prior Opinion and Order.

3

## II. Standard of Law

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed but within such time as to not delay the trial. Fed. R. Civ. P. 12(c). Judgment on the pleadings under Rule 12(c) may be granted "only if, viewing all the facts in the light most favorable to the nonmoving party, no material issue of fact remains and the moving party is entitled to judgment as a matter of law." *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012) (citing *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010) (citing *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)). The only notable difference is that a court, for a motion on the pleadings, may review not only the complaint but also the answer and written instruments attached to the pleadings. *Brautigam v. Fraley*, 684 F. Supp. 2d 589, 591–92 (M.D. Pa. 2010).

## III. Discussion

A plaintiff pursuing a claim for a violation of the TCCWNA must establish four elements:

> [F]irst that the defendant was a 'seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid'; second, that the defendant offered or entered into a 'written consumer contract or [gave] or display[ed] any written consumer warranty, notice or sign'; third, that at the time that the written consumer contract is signed or the written consumer warranty, notice or sign is displayed, that writing contains a provision that 'violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee' as established by State or Federal law; and finally, that the plaintiff is an 'aggrieved consumer.'

4

*Patterson v. Forever 21, Inc.*, No. 16-cv-05087, 2018 U.S. Dist. LEXIS 185086, at *9 (D.N.J. Oct. 26, 2018) (quoting *Spade*, 181 A.3d at 976).

Wyndham argues that Plaintiff's TCCWNA claim fails as to two of the elements identified above. First, it argues that the definition of "aggrieved consumer," as clarified by *Spade*, excludes the type of claim asserted by Plaintiff. Second, and in the alternative, it argues that the challenged provisions within the Terms of Use do not actually violate clearly established New Jersey law and, therefore, cannot support a TCCWNA claim. The Court need not address Wyndham's second argument, as its review of the "aggrieved consumer" issue resolves the pending Motion.

The parties have competing interpretations of the New Jersey Supreme Court's ruling in *Spade* and its application to this case. Therefore, the Court begins its discussion by considering *Spade*, along with the few recent cases relying on *Spade*, before applying it to the facts pled in this case.

### A. *Spade* and its progeny

In *Spade*, the New Jersey Supreme Court articulated that the term "aggrieved consumer" as that term is used in the TCCWNA "denotes a consumer who has suffered some form of harm as a result of the defendant's conduct." 181 A.3d at 980. That harm may extend beyond monetary damages, but the consumer must have evidence that she suffered "adverse consequences as a result of the defendant's regulatory violation" in order to qualify for relief as an "aggrieved consumer." *Id.* at 981. The *Spade* court gave the following example and guidance:

> If, for example, a furniture seller fails to timely deliver a consumer's furniture, and the consumer would have sought a refund had he or she not been deterred by the "no refunds" language prohibited by N.J.A.C. 13:45A-5.3, that consumer may be an "aggrieved consumer" entitled to a civil penalty under N.J.S.A. 56:12-17. If an untimely delivery and misleading "no refunds" language leave a consumer without furniture needed for a family gathering, the consumer

5

may be an "aggrieved consumer" for purposes of N.J.S.A. 56:12-17. Proof of harm resulting from contract language prohibited by N.J.S.A. 56:12-15 may warrant a civil penalty under N.J.S.A. 56:12-17, even if the harm is not compensable by damages.

In the absence of evidence that the consumer suffered adverse consequences as a result of the defendant's regulatory violation, a consumer is not an "aggrieved consumer" for purposes of the TCCWNA. In the setting of these appeals, if a consumer has entered into a sales contract containing a provision that violated N.J.A.C. 13:45A-5.3, but his or her furniture was delivered conforming and on schedule, and he or she has incurred no monetary damages or adverse consequences, that consumer has suffered no harm. Such a consumer is not an "aggrieved consumer" under N.J.S.A. 56:12-17.

*Id.*

Courts have since applied the *Spade* decision to TCCWNA cases. The United States District Court of New Jersey applied *Spade* in *Patterson v. Forever 21, Inc.* to conclude that the plaintiff was not an "aggrieved consumer" under the TCCWNA. 2018 U.S. Dist. LEXIS 185086, at *16. In that case, the plaintiff alleged that she purchased several items from the defendant retailer's website and the defendant had terms and conditions with unlawful indemnification and disclaimer provisions. *Id.* at *2–4. The court dismissed the complaint, concluding plaintiff's failure to allege any harm suffered by virtue of the referenced terms and conditions was lethal to her TCCWNA claim.

Plaintiff has not alleged that she was prevented from returning the items or otherwise pursuing any remedies relating to the purchased items or that [d]efendant attempted to enforce the T&C Provisions to Plaintiff's detriment. Plaintiff's allegations mirror the hypothetical consumer, in *Spade*, who entered into a sales contract, that contained a provision allegedly violating a New Jersey statute, but received timely delivery of conforming goods.

*Id.* at *15–16.

That District Court also recently decided *Truglio v. Planet Fitness, Inc.*, No. 15-cv-7959, 2018 U.S. Dist. LEXIS 214694 (D.N.J. Dec. 21, 2018). There, the plaintiff executed a health club membership agreement with the defendant but contended that the agreement's terms

6

imposed misleading cancellation requirements, specifically a complicated written notice provision. *Id.* at *2. However, the amended complaint did not allege that the plaintiff ever cancelled or attempted to cancel her membership. *Id.* at *3. Applying *Spade*, the court dismissed the TCCWNA claim because the plaintiff, whose only alleged harm was entering into a gym membership contract containing an allegedly unlawful cancellation provision, was not an "aggrieved consumer" capable of obtaining relief under the TCCWNA. *Id.* at *12. Elaborating on the non-compensable harm described in *Spade*, the District Court explained:

> The compensable non-monetary claims *Spade []* envisions involve situations in which an unlawful contractual term caused the plaintiff some concrete harm, such as being deterred from obtaining a refund or not receiving the contracted-for goods. Here, the Amended Complaint merely alleges that Plaintiff entered into the gym membership contract containing an allegedly misleading cancelation [sic] provision, but contains no allegations of concrete harm, such as that Plaintiff wished or attempted to cancel her membership agreement but was prevented from doing so, or that the cancellation provision somehow impacted her ability to use the gym membership.

*Id.* at *20.

New Jersey state courts have also applied *Spade*. In *Wright v. Bank of America, N.A.*, the plaintiff alleged that the absence of required language on notices of intention to foreclose gave rise to violations of the TCCWNA. 194 A.3d 101, 102 (Super. Ct. App. Div. 2018). The Superior Court noted that no foreclosure action was ever commenced after the plaintiff was served with the deficient pre-suit notices. *Id.* at 103. The court concluded there was no discernable damage alleged in the complaint, so it remanded the case to allow the plaintiff to amend and identify the alleged harm that he suffered as a result of the pre-suit notices. *Id.* at 104.

### B. Application of *Spade* to this case

Plaintiff alleges that Wyndham's Terms of Use unlawfully disclaim certain liability and damages connected with the online booking process, and because Plaintiff is suing Wyndham for

7

liability and damages for Wyndham's "drip pricing" practice on its booking website, he has suffered harm for purposes of qualifying as a "aggrieved consumer." Plaintiff seeks to distinguish himself from *Spade* and its progeny by pointing out that he did not receive, in essence, conforming goods but instead suffered a CFA-violating "drip pricing" practice during his booking process. The Court does not agree.

First, the actual harm that Plaintiff pleads, namely financial harm caused by the drip pricing, is just that—a harm attributable to drip pricing. But this alleged CFA violation is divorced from to the allegedly unlawful Terms of Use provisions. In order to be an aggrieved consumer under the TCCWNA, the consumer must have "suffered harm *as a result of the defendant's inclusion of prohibited language.*" *Spade*, 181 A.3d at 980 (emphasis added). The harm allegedly suffered from the drip pricing practice is simply not a result of the challenged provisions of the Terms of Use.

Second, Plaintiff is correct that this case is somewhat different than *Spade* by the very fact that something is alleged to have gone wrong during the consumer transaction. In other words, Plaintiff asserts that, unlike the plaintiffs in *Spade*, he received "non-conforming goods" when he was deceived by the drip pricing practice on the booking website. *See Spade*, 181 A.3d at 971 (contract for sale of goods with unlawful provisions does not give rise to harm when goods are conforming). Plaintiff argues that this takes him out of the *Spade* hypothetical where the consumer is not aggrieved. But, once again, Plaintiff's claim lacks any link between the challenged provisions of the Terms of Use and the harm he claims to have suffered. Plaintiff fails to allege a suffered harm that flows from the allegedly unlawful provisions. He does not plead that he was prevented from or deterred from vindicating his rights in this or any lawsuit because

8

of the language of those provisions.⁴ He does not plead, for example, that he failed to seek specific damages or add a specific defendant because he believed those were foreclosed by the Terms of Use. He did not plead that he delayed in bringing his lawsuit or that he would have crafted his claims or class description differently. He does not plead that the Terms of Use had any effect on his hotel selection, booking process, or hotel experience. There is simply no harm alleged to have occurred in his Complaint that can be plausibly traced to the provisions within the Terms of Use.

In an attempt to show harm, Plaintiff identifies what he labels as a risk of harm, specifically that the allegedly prohibited language creates a potential threat to Plaintiff's eligible recovery. After all, so the theory goes, Wyndham could use the alleged unlawful provisions as a defense to certain claims for liability or damages. But that has not happened in this case. *See Patterson*, 2018 U.S. Dist. LEXIS 185086, at *15 ("Plaintiff has not alleged that . . . Defendant attempted to enforce the T&C Provisions to Plaintiff's detriment.") If that were to happen, Plaintiff conceivably would have suffered the requisite harm. Plaintiff points out that such a result enables Wyndham to dodge accountability by using violative language in its disclosures to deter consumers from vindicating their rights but then avoiding actual liability by choosing not to enforce the violative terms against those consumers that actually sue.⁵ This may be a predicament that the savvy consumer confronts, but *Spade* interpreted the TCCWNA to only extend the right to sue to a consumer who is harmed by a non-conforming term, thus becoming

---

⁴ Wyndham notes that Plaintiff admitted in discovery that he had not actually read the Terms of Use. Because the Complaint simply alleges no harm flowing from the Terms of Use, whether Plaintiff read the Terms of Use is not a fact the Court need consider in deciding this issue. Further, in any event, during the telephonic oral argument, Plaintiff's counsel acknowledged that Plaintiff could not cure the pleading problem identified in this Opinion via amendment.

⁵ The fallacy to this policy argument is that it ignores the consumer who was harmed, even minimally, and does in fact bring her case to court.

9

"aggrieved." *Spade*, 181 A.3d at 981 (consumer with sales contract containing unlawful provision but experiences no adverse consequences is not an aggrieved consumer under N.J.S.A. 56:12-17).

Even if this Court were to disagree with *Spade*'s statutory interpretation, in questions of state law, this Court is bound to follow New Jersey law as expressed by its supreme court. *Travelers Prop. Cas. Co. of Am. v. USA Container Co.*, 686 F. App'x 105, 107 (3d Cir. 2017). The reality is that the New Jersey Supreme Court considered the TCCWNA's purpose of preventing deceptive practices and applied a narrower definition of "aggrieved consumer" than that advanced by Plaintiff here, and limited the right to sue to only consumers "who ha[ve] *suffered* some sort of harm *as a result* of the defendant's conduct." 181 A.3d at 980.

The Court therefore concludes that *Spade* simply did not extend "aggrieved consumer" status to those who could in theory realize harm from deceptive contract terms but do not suffer any actual harm (monetary or otherwise) flowing from the asserted deceptive terms. Plaintiff candidly admitted that if the Court found his Complaint deficient on the issue of "aggrieved consumer," he had no further factual allegations that could save his TCCWNA claim. Therefore, any leave to amend would be futile in this case. The TCCWNA claim is dismissed from Plaintiff's Complaint with prejudice.

## IV. **Conclusion**

For these reasons, the Court grants Wyndham's Motion for Judgment on the Pleadings and dismisses Count II, the TCCWNA claim, with prejudice.

An appropriate Order will issue.

*[signature]*

Mark R. Hornak
Chief United States District Judge

cc: All counsel of record

Dated: January 16, 2019