IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS LUCA JR., individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 16-cv-746-MRH |
| v. | |
| WYNDHAM HOTEL GROUP, LLC, and WYNDHAM HOTELS AND RESORTS, LLC, | |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO EXTEND THE EXPERT DISCOVERY PERIOD AND FILE A SUR-REPLY**

Plaintiff Thomas Luca, Jr. opposes Defendants' requests to extend the discovery period and to file a sur-reply in opposition to Plaintiff's motion for class certification. The Court should deny those requests for the reasons stated below. Plaintiff does not oppose Defendants' request to reschedule the March 19, 2019 oral argument, as a matter of professional courtesy, at the request of Defendants' counsel.

### A.  There is no need for further discovery because Plaintiff's rebuttal expert report is a true rebuttal that does not introduce any new underlying data.

The Court should deny Wyndham's unnecessary request to depose Dr. Morwitz regarding her rebuttal expert report. First, Dr. Morwitz's report contains permissible rebuttal testimony. "Absent a stipulation or a court order," Rule 26(a)(2)(D)(ii) allows the submission of rebuttal testimony "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party…." Rebuttal testimony is proper so long as its purpose is to "explain, repel, counteract or disprove the evidence of the adverse party." *United States v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974). Dr. Morwitz's rebuttal report properly responds to the expert reports submitted by Defendants' experts Dr. Simonson and Dr. Bowen. *See* Morwitz Rebuttal (ECF No. 164-4) at ¶ 1 ("Below I identify eight major points in their reports

1

with which I disagree and explain why. I also identify statements made by Dr. Simonson in his deposition that support the opinions I offer in my own expert report."). In light of the Court's order granting an extension Plaintiff's motion for an extension of time to file his reply, (ECF No. 146), Dr. Morwitz's rebuttal report was also timely filed. *Newill v. Campbell Transp. Co.*, No. 2:12-CV-1344, 2015 WL 652592 (W.D. Pa. Jan. 14, 2015) (refusing to strike rebuttal expert report disclosed beyond period otherwise permitted under Rule 26(a)(2)(D)(ii)).

Second, as Dr. Morwitz made clear in her rebuttal report, her opinion is almost entirely a direct response to materials that Dr. Simonson provided to the Court and to Plaintiff. *See, e.g.*, Morwitz Rebuttal ¶ 14 ("Based on the data provided in Appendix I of his expert report…."); ¶ 15 ("I was provided access to a spreadsheet that contained the data from Dr. Simonson's study…."); ¶ 20 ("[B]ased on my own reading of the open-ended responses…."); ¶ 47 (discussing Table 2 and Appendix G of Dr. Simonson's report); ¶¶ 49-50 (citing "Ex. G [Table 12] at 42"); ¶ 53 (citing "Ex. G [Table 14] at 44").

Dr. Morwitz did not conduct any new surveys or introduce any new statistical evidence. Paragraph 30 of the rebuttal report, which Defendants cite to as exemplifying "subjective and unexplained decisions," demonstrates that Dr. Morwitz was merely *counting up and grouping* certain survey results provided by Dr. Simonson. Her counting and grouping methodology is fully explained within the rebuttal report itself in paragraphs 14–18 and 20–23. Defendants do not need a deposition to ask Dr. Morwitz for that information. Further, Defendants' request for Dr. Morwitz to fully disclose her "consideration materials" is moot, as the only underlying data considered in Dr. Mortwitz's rebuttal report was created by Wyndham and its experts themselves.

### B. Plaintiff's reply brief did not at all "shift" the proposed theory of liability, and Defendants should not be granted leave to file a sur-reply.

Defendants request leave to file a sur-reply, arguing Plaintiff's reply brief marked a "significant departure" from Plaintiff's previous theory of liability under the New Jersey Consumer Fraud Act. (Defs.' Mot. at 3). That is not accurate, and what Defendants now coin the "First Page Theory" has in fact been articulated by Plaintiff since the complaint was filed. For example, in introducing the NJCFA claim, Plaintiff alleged:

> Despite the fact that the resort fee constitutes part of the true cost to the consumer to rent a room from Defendants, **the resort fee is not included in the bolded, large-font price displayed on Defendants' Websites as the nightly rate for the room**, nor is the resort fee advertised or otherwise clearly disclosed. Defendants fail to explain that the resort fee constitutes part of the true cost of renting a hotel room. Instead, Defendants advertise rooms at rates that do not include the resort fee, and lead consumers to the false belief that the resort fee is merely a "tax" that is not part of the true cost of renting a room at Defendants' hotels.

(Compl. ¶ 7) (emphasis added). Plaintiff then described in detail how the "Wyndham Daily Rate" and "Average Nightly Rate" prominently displayed on the first two pages in the booking flow deceptively excluded the resort fees. (Compl. ¶¶ 45–50). To top it off, Plaintiff alleged that "[b]y prominently advertising a nightly room rate that does not include Defendants' per night resort fee charge[,] Defendants deceived Plaintiff and the Class," (Compl. ¶ 63), and that "Defendants fail to advertise the true room rates because Defendants seek to gain a competitive advantage by advertising rooms at lower prices than the competition and because Defendants know that consumers will rely on the advertised rate in making decisions in selecting Defendants' hotels for stays." (Compl. ¶ 64).

Plaintiff's explanation of this claim was further fleshed out in Plaintiff's response in opposition to Defendants' first motion to dismiss, where Plaintiff cited to N.J.S.A. § 56:8-2.2, which prohibits advertising as part of a scheme not to sell at the advertised price (Pl.'s Mem. in

Opp. to Defs.' MTD (ECF No. 25) at 8). Plaintiff also argued in that brief that Defendants' subsequent disclosure of resort fees in later steps of the booking flow do not cure the CFA violation of false price advertising. (*See id.* at 10) ("Defendants cannot mislead consumers as to the true price of renting a room, and then claim disclosures containing the true price cure their deception."). Plaintiff offered two theories of his ascertainable loss in that brief, one of which was that plaintiff intended to purchase a room for a two-night stay at the advertised rate of $359 per night, not at the ultimate true cost of $384 including the resort fee. (*Id.* at 13). Doing the math for two nights, Plaintiff wrote "Plaintiff paid $50 more than he would have a result of Defendants' deception—that is a quantifiable economic loss." (*Id.* at 13 n.10).[1]

This is exactly the approach to the CFA theory of liability and ascertainable loss that Plaintiff has taken during the class certification briefing, including the reply brief. In the initial memorandum in support of class certification, Plaintiff wrote:

> As to the CFA claim, whether Defendants engaged in illegal bait-and-switch scheme is a common contention that can be determined in one stroke for all class members. The RF Hotels prominently advertised Room Rates on the Websites in exactly the same manner. Defendants never intended to rent rooms to Plaintiff or the Class Members at those prices. Instead, Plaintiff and the Class Members were all deceived into paying the Room Rates plus mandatory Resort Fees. Defendants' scheme applies uniformly to every member of the Class and evidences "unlawful conduct," which is the first element of the CFA claim. Moreover, common evidence from Defendants' own records can be used to determine the Resort Fees paid by Plaintiff and the Class, establishing the second element of the CFA claim— ascertainable loss.
>
> If Defendants had honored the advertised Room Rates, every Class Member could and would have paid exactly those prices (plus government taxes) and nothing more to secure the rooms. Instead, every Class Member was deceived into paying a price above the advertised Room Rates in the form of the Resort Fees.

---

[1] As a result of information learned during discovery, Plaintiff did ultimately abandon the "tax on tax" theory of damages referenced in the motion to dismiss response, but that was clear from Plaintiff's first class certification memorandum, which never discusses that theory.

(Pls.' Mem. in Supp. of Class Cert (ECF No. 104) at 8) (footnote omitted). In describing the ascertainable loss suffered by the proposed class for the CFA claim, Plaintiff identified the resort fees themselves, just as he did in responding to the motion to dismiss. (*Id.* at 13) (noting classwide damages could be proven from Defendants' records of resort fees paid).

Plaintiff's reply brief does not present any new theories of liability or ascertainable loss other than those described above, so Defendants were fully capable of responding. Almost all of the reply is focused on distinguishing Defendants' primary authority cited in opposition, *Marcus v. BMW of North America, LLC*, 687 F.3d 583 (3d Cir. 2012), and explaining why the approach to ascertainable loss and causation in *Marcus* is not an appropriate fit for this case. (*See* Pls.' Reply Br. (ECF No. 163) at 3–17). That entire legal argument involves the same theory of liability previously set forth in the opening class certification memorandum, so Defendants' suggestion that there has been some type of "significant departure" from Plaintiff's previous arguments, or that some CFA theories have been "abandoned," is simply wrong. "Drip pricing" is not a separate theory of liability giving rise to a different measurement of damages. Instead, "drip" and "partitioned" pricing are simply descriptions of the bait-and-switch mechanism Defendants employed to deceive consumers using a prominent and false initial price.

Plaintiff's references to Defendants' practices of grouping and labeling resort fees within or next to government-imposed taxes were not a separate theory of liability either; those practices just reinforce the fact that it was not obvious to consumers what the true room prices were because the resort fees were inconspicuous in comparison to the room rates. These are not theories that have been "abandoned," nor are the subsequent resort fee disclosures entirely "irrelevant" in a general sense. Rather, Plaintiff's argument on reply was that subsequent disclosures are irrelevant to class-wide proof of the causation and ascertainable loss elements.

**CONCLUSION**

Plaintiff's reply brief did not change theories or present arguments that Defendants could not have anticipated in filing their response in opposition, and Plaintiff's rebuttal expert report was an appropriate rebuttal that added no new data. For these reasons, Defendants' motion to reopen discovery and for leave to file a sur-reply should be denied.

However, Defendants' counsel has communicated to Plaintiff's counsel that Defendants seek to reschedule the oral argument due to scheduling conflicts, regardless of how the Court decides the other issues. Plaintiff does not oppose that request.

Dated:  February 26, 2019    Respectfully submitted,

By:  */s/ Gary F. Lynch*
Gary F. Lynch
glynch@carlsonlynch.com
Jamisen A. Etzel
jetzel@carlsonlynch.com
**Carlson Lynch Sweet Kilpela & Carpenter, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
T: (412) 322-9243
F: (412) 231-0246

Joseph P. Guglielmo
Erin Green Comite
Carey Alexander
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com
calexander@scott-scott.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2019, I served a true and correct copy of the foregoing document and its attachments by filing them on this court's CM/ECF system, which will cause service on all email accounts listed on the electronic service list, including counsel of record for all parties.

>*/s/ Gary F. Lynch*
>Gary F. Lynch